IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ERNEST E. SOWELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-1739 |
| | § | |
| INTERNATIONAL BROTHERHOOD OF | § | |
| TEAMSTERS, ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending is Plaintiff Ernest E. Sowell's Motion to Remand and request for attorneys' fees (Document No. 4), and Defendants International Brotherhood of Teamsters, Teamsters Local Union 747, James P. Hoffa, and David Ross's Motion to Transfer Venue (Document No. 6). After carefully considering the motions, responses, and the applicable law, and having heard additional arguments of counsel at the Rule 16 conference, the Court GRANTS the Motion to Remand, DENIES an award of attorneys' fees, and DENIES AS MOOT the Motion to Transfer Venue.

## I.   Background

This dispute arises from the termination of an officer of a local subsidiary of an international union. Houston-based Defendant Teamsters Local Union 747 ("Local 747") employed Plaintiff from December 1, 1999 to April 15, 2009, in the positions

of Executive Administrator and General Counsel.[1]  Plaintiff also was elected Local 747's Secretary-Treasurer in 2000, and its President and principal officer in 2004.[2]  Local 747 is a semi-autonomous local labor union subordinate to Defendant International Brotherhood of Teamsters (the "International Union").[3]

On April 15, Defendant James P. Hoffa ("Hoffa"), citing his authority as General President of the International Union, removed Plaintiff from his position at Local 747, and imposed an emergency trusteeship under David Ross ("Ross").[4]  Hoffa sent a letter to the members and officers of Local 747 to inform them of his reasons for imposing the trusteeship, in which he alleged that the officials of Local 747 were not "adequately responding" to petitions filed by members.[5]  He further asserted that "certain officers . . . may have engaged in financial improprieties relating to their compensation and to the payment of legal fees."[6]  The letter concluded by citing Hoffa's authority under the International Union's Constitution (the "International Constitution") as General President to impose the trust:

---

[1] Document No. 1, ex. 1 at 3-4 (Plaintiff's Orig. Pet.).

[2] Document No. 7, ex. 3, at 3.

[3] Document No. 1, ex. 1, at 2.

[4] Document No. 7, ex. 1.

[5] Id. at 1.

[6] Id.

> (1) to correct financial corruption or malpractice;
> (2) to assure the performance of Local 747's duties as a
> bargaining representative; and (3) because the affairs of
> Local 747 are being conducted in such a manner
> inconsistent with established policies and practices,
> which jeopardize the interests of the International Union
> and Local 747 and violate the rights of Teamster-
> represented workers.[7]

Plaintiff filed this suit in state court on May 19, 2009, alleging four state law claims: (1) breach of contract; (2) tortious interference with contract; (3) defamation; and (4) libel *per se*.[8] Defendants removed on June 8, 2009. In their notice of removal, Defendants argued that the case is covered by the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 411-12, 461-66, 501.[9] Plaintiff contends removal is improper because his complaint presents only state law claims, and requests his attorney's fees incurred for improper removal.[10]

Defendants also requested that the Court transfer this matter to the United States District Court for the Southern District of New York because this case "will likely implicate matters relating to the Consent Decree" entered into as part of a 1990 settlement

---

[7] Id. at 4.

[8] Document No. 1, ex. 1 (Plaintiff's Orig. Pet.).

[9] Document No. 1 at 2.

[10] Document No. 5.

3

between the United States and the International Union, although Defendants acknowledged at the Rule 16 conference that the motion may now be denied as moot.

## II.  <u>Discussion</u>

Under 28 U.S.C. § 1441, an action filed in state court may be removed to federal court when (1) federal jurisdiction exists and (2) the removal procedure is properly followed.  The removing party bears the burden of establishing that federal jurisdiction exists over the controversy.  <u>Winters v. Diamond Shamrock Chem. Co.</u>, 149 F.3d 387, 397 (5th Cir. 1998).  Any doubt about the propriety of the removal is to be resolved in favor of remand.  *See* <u>Acuna v. Brown & Root Inc.</u>, 200 F.3d 335, 339 (5th Cir. 2000); <u>Walters v. Grow Group, Inc.</u>, 907 F. Supp. 1030, 1032 (S.D. Tex. 1995).

Federal jurisdiction exists if a plaintiff's well-pleaded complaint raises a claim that arises under federal law.[11]  28 U.S.C. § 1331.  Generally, a plaintiff is the master of the complaint and may avoid federal jurisdiction by relying exclusively on state law.  <u>Caterpillar Inc. v. Williams</u>, 107 S. Ct. 2425, 2429 (1987).  An independent corollary to the well-pleaded complaint rule is the "complete preemption doctrine."  <u>Id.</u> at 2430.  Under this doctrine, certain statutes--like section 301 of the Labor Management

_____

[11]  Neither party claims diversity jurisdiction exists. Document No. 1 at 1-2; <u>Id.</u> ex. 1 at 2 (Plaintiff's Orig. Pet.).

Relations Act (LMRA), 29 U.S.C. § 185--completely preempt areas of state law.  <u>Richter v. Merchs. Fast Motor Lines, Inc.</u>, 83 F.3d 96, 97 (5th Cir. 1996).  "When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law."  <u>Beneficial Nat'l Bank v. Anderson</u>, 123 S. Ct. 2058, 2062 (2003).[12]

Section 301 of the LMRA provides, in part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect of the amount in controversy or without regard to the citizenship of the parties.

---

[12] "Complete preemption," despite its name, is distinct from the concept of "preemption."  The latter deals with resolution of the conflict of law--that is, whether to apply federal law when it yields a result conflicting with state law, or when directed to do so by statute.  <u>See</u> <u>Ellis v. Liberty Life Assur. Co. of Boston</u>, 394 F.3d 262, 275 n.34 (5th Cir. 2004) (discussing the difference between preemption and complete preemption in ERISA claims).  Normal preemption can be raised as a defense, but does not appear on the face of a complaint and thus cannot serve as a basis for removal under the well-pleaded complaint rule.  <u>Id.</u>  Complete preemption, on the other hand, deals with *jurisdiction*.  <u>Sam L. Majors Jewelers v. ABX, Inc.</u>, 117 F.3d 922, 925 (5th Cir. 1997).  "In these cases, federal law does not merely preempt a state law to some degree; rather, it substitutes a federal cause of action for the state cause of action, thereby manifesting Congress's intent to permit removal."  14B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3722.2 at 403-09 (4th ed. 2009) (footnotes omitted).

5

29 U.S.C. § 185(a). The Fifth Circuit has recognized two circum-
stances that give rise to complete preemption under section 301 of
the LMRA: (1) when interpretation of a state law claim is
inextricably intertwined with the consideration of the terms of a
labor contract; and (2) when application of state law to the
dispute requires interpretation of a collective bargaining
agreement. Thomas v. LTV Corp., 39 F.3d 611, 616-17 (5th Cir.
1994) (citing Lingle v. Norge Div. of Magic Chef, Inc., 108 S. Ct.
1877, 1881-82 (1988); Allis-Chalmers v. Lueck, 105 S. Ct. 1904,
1912 (1985)). "The preemptive effect of section 301 applies to
causes of action arising in both contract and tort." Id. at 616
(citing United Steelworkers of Am. v. Rawson, 110 S. Ct. 1904, 1909
(1990)).

On the other hand, if a state law claim would require
addressing the same set of facts as a claim brought under section
301, but still can be resolved without interpretation of the labor
agreement itself, the claim is "independent" of the labor agreement
for section 301 preemption purposes. Lingle, 108 S. Ct. at 1883.
See also Livadas v. Bradshaw, 114 S. Ct. 2068, 2078 (1994).
Furthermore, "the presence of a federal question, even a § 301
question, in a defensive argument" does not invoke complete
preemption; a defendant "cannot, merely by injecting a federal
question into an action that asserts what is plainly a state-law
claim, transform the action into one arising under federal law,

thereby selecting the forum in which the claim shall be litigated."
<u>Caterpillar</u>, 107 S. Ct. at 2433.

As an initial matter, the Court notes that it need not decide
whether, as Defendants assert, complete preemption can be based
upon interpretation of a union constitution as well as a collective
bargaining agreement.[13]   Even assuming that this is the law, none
of Plaintiff's claims is completely preempted.

A.   <u>Breach of Contract</u>

In Count One of his petition, Plaintiff alleges that the
International Union "adopted and assumed joint responsibility" with

---

[13] Document No. 7 at 11.   Though the Supreme Court has held
that section 301 covers union constitutions, <u>United Ass'n of
Journeymen v. Local 334</u>, 101 S. Ct. 2546, 2553 (1981), and that an
individual union member may bring suit under section 301 against a
union to enforce a union constitution, <u>Wooddell v. Int'l Bhd. of
Elec. Workers</u>, 112 S. Ct. 494, 500-01 (1991), it has not addressed
*complete preemption* under section 301 based on interpretation of
union constitutions.   *Compare* <u>Tisdale v. Local 704</u>, 25 F.3d 1308,
1310 (6th Cir. 1994) ("[W]e think it fair to say that intra-union
matters are now preempted on the same terms as are labor-management
matters."); <u>Panczykowski v. Laborers</u>, 166 L.R.R.M. 2110, 2115
(W.D.N.Y. 1998), *aff'd* 2 Fed. App'x 157 (2d Cir. 2001) (since a
union constitution is a "labor contract" within the meaning of
section 301, if resolution of plaintiff's claim requires
interpretation of a union constitution, it is completely
preempted); <u>Martin v. Dist. No. 1--Marine Eng'rs' Beneficial Ass'n</u>,
Civ. A. No. 93-2953, 1994 WL 34044, at *4 (E.D. La. Feb. 2, 1994)
(dependence upon interpretation of "labor contracts"--including
union constitutions--gives rise to complete preemption); *with*
<u>DiPilato v. Commonwealth Ass'n of Sch. Adm'rs, Local 502</u>, 588 F.
Supp. 2d 631, 634 (E.D. Pa. 2008) ("Without allegation of a
collective bargaining agreement, section 301 does not completely
preempt a party's state law claims and therefore does not provide
a basis for federal question jurisdiction.").

Local 747 for his individual employment contract, and that both defendants breached the contract.[14]  Defendants contend this claim is completely preempted under both section 301 of the LMRA and Title III of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 461 *et seq.*  In the alternative, Defendants claim that the Court should assume jurisdiction pursuant to the substantial federal question doctrine.  Defendants' arguments are discussed in turn.

    1.   <u>LMRA</u>

Defendants contend that Plaintiff's "claims cannot be resolved without interpretation of the Union's Constitution," and that they can only be resolved "by applying substantive principles of federal labor law."[15]  The breach of contract claim pled by Plaintiff, however, is based wholly on his own individual employment contract.

Though "[t]he dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute," <u>Teamsters Union v. Lucas Flour Co.</u>, 82 S. Ct. 571, 576 (1962), "[s]ection 301 says nothing about the content or validity of *individual* employment contracts." <u>Caterpillar</u>, 107 S. Ct. at 2431 (emphasis added).  Defendants make no allegation that interpretation of Plaintiff's individual

---

[14] Document No. 1, ex. 1 at 3-4.

[15] Document No. 7 at 7.

8

employment contract will *require* interpretation of the International Constitution or any other union contract covered by section 301. *See* Thomas, 39 F.3d at 616-17. Therefore, they have not carried their burden to show that the contract claim supports removal.

### 2.    LMRDA

Defendants assert that, since "Congress created a comprehensive statutory scheme for federal oversight of union trusteeships" under Title III of the LMRDA, Plaintiff's claims should be construed as a challenge to Hoffa's imposition of a trusteeship over Local 747, thus giving rise to federal question jurisdiction.[16]

The Supreme Court has never held that there is complete preemption under the LMRDA. *See* Hahn v. Rauch, 602 F. Supp. 2d 895, 910 (N.D. Ohio 2008); *cf.* 13D CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3566, at 297-306 (3d ed. 2008) (noting that "[v]ery few statutes have a complete preemption effect," and listing examples of such statutes). Thus, to establish complete preemption under the LMRDA, Defendants must show that Congress intended this portion of the LMRDA "to provide the exclusive cause of action for the claims at issue." Bernhard v. Whitney Nat'l Bank, 523 F.3d 546, 553 (5th Cir. 2008).

---

[16] Document No. 7 at 9.

Defendants note the "comprehensive statutory scheme for federal oversight of union trusteeships" located in 29 U.S.C. § 461 *et seq.*, but cite only one case to support the notion that the LMRDA completely preempts Plaintiff's breach of contract claim: <u>Davis v. United Auto Workers</u>, 392 F.3d 834, 840 (6th Cir. 2004), *overruled on other grounds by* <u>Blackburn v. Oaktree Capital Mgmt., LLC</u>, 511 F.3d 633 (6th Cir. 2008).   In <u>Davis</u>, however, the plaintiff's state law claims that he had been wrongfully terminated as regional director of his union completely depended upon whether he had won the office in a valid election.   392 F.3d at 839. Because "claims for postelection relief are relegated to the exclusive jurisdiction of the Secretary of Labor by the LMRDA," the court of appeals held, the trial court was required to dismiss the plaintiff's state law claims for lack of jurisdiction.   <u>Id.</u>   *See also* 29 U.S.C. § 481-83 (setting up a comprehensive federal enforcement procedure under the Secretary of Labor as the "exclusive" remedy for challenging union elections); <u>Hodgson v. Carpenters Resilient Flooring Local Union No. 2212</u>, 457 F.2d 1364, 1367 (3d Cir. 1972) ("It is clear . . . that the only post election remedy, state or federal, is a suit by the Secretary against the Union under § [482] of the Act.") (discussing <u>Calhoon v. Harvey</u>, 85 S. Ct. 292 (1964))).

Unlike <u>Davis</u>, Plaintiff here seeks no postelection relief but rather, recovery of damages on a simple common law claim for breach

of his employment contract.   Defendants have pointed to no
statutory language in LMRDA or its subchapter on Trusteeships, 29
U.S.C. § 461-466, which suggests that Congress intended complete
preemption of Plaintiff's contract claim.   *See* Bernhard, 523 F.3d
at 553.   Moreover, Plaintiff's complaint on its face presents no
challenge to the trusteeship.   Although the propriety of the
trusteeship may well be raised as a defense on the contract claim,
it could not justify removal "even if the defense is anticipated in
the plaintiff's complaint, and even if both parties concede that
the federal defense is the only question truly at issue."
Caterpillar, 107 S. Ct. at 2430.

### 3.   Substantial federal question

Defendants nonetheless assert that Plaintiff's state law
claims "implicate significant federal issues," and, citing Grable
& Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 125 S. Ct. 2363
(2005), contend that this Court has jurisdiction under the
substantial federal question doctrine.   In Grable, the court
resolved a split within the courts of appeals by recognizing
federal jurisdiction over a "rare state quiet title action that
involves contested issues of federal law," namely, whether the
IRS's sale of real property to satisfy the plaintiff's tax
delinquency was invalid because the IRS gave to the plaintiff
actual notice of the sale by certified mail rather than by personal

service, which was specified in the federal statute.  125 S. Ct. at 2366, 2371.  The whole case depended upon that "dispositive and disputed federal issue at the heart of the state-law title claim," the Court observed, and a finding of federal jurisdiction would "not materially affect, or threaten to affect, the normal currents of litigation."  Id. at 2371.  In finding federal jurisdiction under 28 U.S.C. § 1331 in this "rare" case, the Court rejected the concept of treating "'federal issue' as a password opening federal courts to any state action embracing a point of federal law."  Id. at 2368.

> Instead, the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.

Id.  Unlike Grable, adjudication of Plaintiff's state law breach of contract claim in no manner depends upon a stated federal issue, and Defendants' defensive assertion of federal law does not confer jurisdiction on this Court.  See, e.g., Bearse v. Port of Seattle, No. C09-0957RSL, 2009 WL 306675, at *4 (W.D. Wash. Sept. 22, 2009). ("In fact, accepting defendant's argument would seem to eviscerate the jurisdictional distinction between complete preemption and the defense of preemption, the latter of which necessarily raises significant issues of federal law but does not provide jurisdiction.").

12

B.   Tortious Interference with Contract

Defendants contend that Plaintiff's Count Two, for tortious interference with contract, is completely preempted because "the Court cannot evaluate whether Defendants had a duty under the International Constitution to terminate Sowell's employment" without interpreting the International Constitution itself.[17] Defendants argue that the International Constitution obligated Hoffa to institute the trusteeship.  First, the elements of the state law tort claim must be identified to determine if interpretation of the union contract is required.  *See* Jones v. Roadway Express, Inc., 931 F.2d 1086, 1089 (5th Cir. 1991) *reh'g denied*, 936 F.2d 789 (citing Lingle, 108 S. Ct. at 1881-82).

In Texas, the elements of tortious interference with a contract are: (1) an existing contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) that proximately caused the plaintiff's injury; and (4) caused actual damages or loss.  Prudential Ins. Co. of America v. Financial Review Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000). Defendants have made no showing that Plaintiff's proof of the essential elements of his state-law claim would require any reference to, let alone interpretation of, the International Constitution.  *See* Lingle, 108 S. Ct. at 1883 (that "just cause"

---

[17] Document No. 7 at 13.

defense to state retaliatory discharge claim may require analysis of "same factual considerations as the contractual determination of whether Lingle was fired for just cause" does not render state law analysis *dependent* upon interpretation of union agreement); *see also, e.g.,* <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 990-91 (9th Cir. 2001) (interference with contract claims not preempted to the extent that plaintiff's proof of "wrongful conduct"--an element of tortious interference under California law--can be shown other than by reference to conduct prohibited by union agreement).[18]

C.   <u>Defamation and Libel *per se*</u>

Plaintiff alleges in Counts Three and Four defamation and libel *per se* under Texas state law. Specifically, Plaintiff points to Defendant Hoffa's letter dated April 15, 2009, in which Hoffa alleged: (1) that Plaintiff engaged in "financial malpractice or

---

[18] In cases where tortious interference claims are found to be completely preempted by § 301, it is usually the collective bargaining agreement itself that is alleged to have been the object of the interference, thereby requiring interpretation of the collective bargaining agreement. *See, e.g.,* <u>United Mine Workers v. Rag Am. Coal Co.</u>, 392 F.3d 1233, 1242-43 (10th Cir. 2004); <u>Kimbro v. Pepsico, Inc.</u>, 215 F.3d 723, 727 (7th Cir. 2000); <u>Turner v. Am. Fed. of Teachers</u>, 138 F.3d 878, 884 (11th Cir. 1998); <u>DeCoe v. Gen. Motors Corp.</u>, 32 F.3d 212, 218 (6th Cir. 1994); <u>Int'l Union, United Mine Workers of Am. v. Covenant Coal Corp.</u>, 977 F.2d 895, 899-900 (4th Cir. 1992); <u>Milne Employees Ass'n v. Sun Carriers, Inc.</u>, 960 F.2d 1401, 1411-12 (9th Cir. 1992); <u>Magerer v. John Sexton & Co.</u>, 912 F.2d 525, 530-31 (1st Cir. 1990); <u>Johnson v. Anheuser Busch, Inc.</u>, 876 F.2d 620, 624 (8th Cir. 1989). Plaintiff in this case has not alleged tortious interference with the International Constitution or any other § 301 contract.

corruption"; (2) that he "abrogated the responsibilities of his positions"; (3) that he "intentionally concealed his employment contract"; and (4) that he "did not competently perform his duties to represent the members of Local 747 in collective bargaining."[19]

In Texas, a defamation claim requires the plaintiff to show that the defendant: (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with either actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement. WFAA-TV, Inc. v. McLemore, 978 S.W.2d 568, 571 (Tex. 1998). It is uncontested that plaintiff is not a public figure.[20]   Therefore, Plaintiff would have to establish that Defendant Hoffa acted negligently with regard to the truth of the statement, which means Hoffa "knew or should have known that the defamatory statement was false." Id. (quoting Foster v. Laredo Newspapers, Inc., 541 S.W.2d 809, 819 (Tex. 1976)). Pleading libel *per se* only eliminates the need to prove special damages from a defamation claim. See Chang v. Linh Nguyen, 81 S.W.3d 314, 318 (Tex. App.--Houston [14th Dist.] 2001, no pet.).

Plaintiff asserts that his defamation claims and libel *per se* claims are not a basis for removal because they "do not require the interpretation of a [collective bargaining agreement] or union

---

[19] Document No. 1, ex. 1 at 8 (Plaintiff's Orig. Pet.)

[20] Document No. 7 at 11.

constitution."[21]   Defendants assert that Plaintiff's defamation claims are completely preempted because the International Constitution obligated Hoffa "to pursue the allegations of financial impropriety involving Sowell once they were brought to his attention," which they label a "well established basis for pre-emption."[22]   Because of this constitutional obligation, Defendants claim that they are protected under Texas law by a "conditional or qualified privilege that attaches to communications made in the course of an investigation following a report of employee wrongdoing."[23]

While an employer in a Texas defamation action has such a privilege, it is an *affirmative defense*.   *See* TEX. CIV. PRAC. & REM. CODE ANN. § 73.001 (Vernon 2008) (listing elements of libel, "a defamation expressed in written or other graphic form"); McIntosh v. Partridge, 540 F.3d 315, 326 (5th Cir. 2008) (citing Denton Publishing Co. v. Boyd, 460 S.W.2d 881, 884 (Tex. 1970)).  Although the scope of complete preemption is broad, "the presence of a federal question, even a § 301 question, in a defensive argument" does not invoke complete preemption.  Caterpillar, 107 S. Ct. at 2433.  *See also* Trevino v. Ramos, 197 F.3d 777, 780 (5th Cir. 1999)

---

[21] Document No. 4 at 5.

[22] Document No. 7 at 11.

[23] Id. at 12 (citing Southwestern Bell Tel. Co. v. Dixon, 575 S.W.2d 596, 599 (Tex. Civ. App.--San Antonio 1978), *writ dism'd w.o.j.*, 607 S.W.2d 240 (Tex. 1980)).

(in retaliatory discharge claim, employer's defense that it had a non-retaliatory reason for the discharge does not "turn on the meaning of any provision of a collective-bargaining agreement" (quoting Lingle, 108 S. Ct. at 1878)); Messina v. Tri-Gas, Inc., 816 F. Supp. 1163, 1168 (S.D. Tex. 1993) (Lake, J.) ("Thus, while defendants assert the terms of the CBA as an affirmative defense to this action [for defamation], their ability to assert that defense does not bestow federal question jurisdiction on this court and will not induce the court to assert jurisdiction where none exists.").

Second, even if this justification argument is not considered purely defensive,[24] Defendants have not carried their burden to show how *interpretation* of the union constitution or of any labor contract within the meaning of the LMRA is required to resolve the defamation claim. Defendants cite, among other cases, Cullen v. E.H. Friedrich Co., Inc., where the court found:

---

[24] Some courts, analyzing defamation claims under different states' laws, have *not* considered the justification argument solely defensive. *See, e.g.,* Shane v. Greyhound Lines, Inc., 868 F.2d 1057, 1063 (9th Cir. 1989) ("The CBA requires employers to notify employees of intended disciplinary action in writing, and simultaneously to notify their Union. Any claim based on the discharge notification is, therefore, 'inextricably intertwined' with the CBA."). *But see* Cramer v. Consol. Freightways, Inc., 255 F.3d 683, 692 (9th Cir. 2001) (en banc) ("The plaintiff's claim is the touchstone for this analysis . . . . If the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense."). The analysis must be guided by the elements of the Texas law claim in the instant case. Jones, 931 F.2d at 1089 (citing Lingle, 108 S. Ct. at 1881-82).

As in . . . the vast majority of cases finding preemption, [plaintiff's] defamation claims are based on facts inextricably intertwined with the grievance and arbitration machinery of the [collective bargaining agreement].

910 F. Supp. 815, 824 (D. Mass. 1995).  This and similar rulings appear when courts analyze statements made by employers who terminate a plaintiff's employment as a result of procedures governed by collective bargaining agreements.[25]  In such cases

---

[25] *See also, e.g.,* Stallard v. B-Line Sys., Inc., 799 F. Supp. 924, 926 (S.D. Ill. 1992) ("[T]he alleged defamatory statements were an integral part of the dismissal process."); Durrette v. UGI Corp., 674 F. Supp. 1139, 1143 (M.D. Pa. 1987) (plaintiff's allegation of slander is "inextricably intertwined with the question of whether the Defendant properly discharged the Plaintiff").

Other cases finding section 301 preemption of defamation claims typically do so when a plaintiff has not used the specified arbitration procedure laid out for such claims in a collective bargaining agreement.  For example, Defendants cite Johnson v. Anheuser Busch, Inc., 876 F.2d 620, 624 (8th Cir. 1989) ("The statements in question . . . would be governed by the grievance procedure set forth in . . . the collective bargaining agreement."); *see also* Strachan v. Union Oil Co., 768 F.2d 703, 704 (5th Cir. 1985) ("The law is completely clear that employees may not resort to state tort or contract claims in substitution for their rights under the grievance procedure in a collective bargaining agreement."); *see also* Bagby v. Gen. Motors Corp., 976 F.2d 919, 921 (5th Cir. 1992) ("[W]e find the facts in the instant case indistinguishable from those in Strachan . . . ."); Willis v. Reynolds Metals Co., 840 F.2d 254, 255 (4th Cir. 1988) (plaintiff "never filed a grievance through the applicable provisions of the collective bargaining agreement, but filed instead her suit"); Green v. Hughes Aircraft Co., 630 F. Supp. 423, 427 (S.D. Cal. 1985) (plaintiff's defamation claims "intertwine not only with management's right to discipline for cause, but also with labor and management's right to resolve disputes openly in accordance with their private agreement").  The Supreme Court has highlighted the importance of section 301 complete preemption to prevent "parties' efforts to renege on their arbitration promises by 'relabeling' as

18

courts frequently construe the defamation claims as "directly relat[ing] to the circumstances surrounding [a plaintiff's] discharge," which would "necessarily involve a construction of the CBA to determine whether [a plaintiff] was wrongfully discharged." Cullen, 910 F. Supp. at 824. This analysis, however, conflates the distinct inquiries of "whether an allegedly defamatory statement was true, versus determining whether a termination is just." Weber v. Lockheed Martin Corp., No. CIV. A. 00-2876, 2001 WL 274518, at *8 (E.D. La. March 20, 2001). The Southern District of Texas previously addressed the difference in Messina:

> Because Messina appears to have stated a *prima facie* case for defamation under Texas law, and because truth of the allegedly defamatory statements is an absolute defense to Messina's defamation claim, the issue in this case is not whether defendants' termination of Messina was just in terms of the CBA, but whether defendants' allegedly defamatory statements were true. Only if a court having jurisdiction over this action determines that the statements were false, as Messina alleges, will it reach the issue on which defendants base their preemption argument--that the statements and their publication were privileged because they were made in accordance with the terms of a CBA.

816 F. Supp. at 1166.

Likewise, the issue raised by the pleading here is not whether Hoffa's institution of the trusteeship was proper under the

_____

tort suits actions simply alleging breaches of duties assumed in collective-bargaining agreements." Livadas, 114 S. Ct. at 2078 (citing Lueck, 105 S. Ct. at 1915). Since the instant case does not concern a collective bargaining agreement's grievance procedure, these cases are inapposite.

International Constitution, but whether Hoffa's allegedly defamatory statements were true.  "[T]he defamation case simply requires a factual finding, and does not require an interpretation" of the International Constitution.  _Weber_, 2001 WL 274518, at *8. That the same facts giving rise to the defamation claim could also, theoretically, give rise to a challenge to the basis of Hoffa's institution of the trusteeship under the International Constitution signifies only that "the state-law analysis might well involve attention to the same factual considerations as the contractual determination of whether" the trusteeship was proper under the International Constitution.  _Lingle_, 108 S. Ct. at 1883.  But "such parallelism" does not "render[] the state-law analysis dependent upon the contractual analysis."  _Id._  _See also, e.g.,_ _Trans Penn_ _Wax Corp. v. McCandless_, 50 F.3d 217, 229 (3d Cir. 1995) ("[A] plaintiff may bring a state law tort action against an employer, even where he could have brought a similar claim based on a provision in [the labor contract], so long as the state claim does not require interpretation of the [labor contract]."); _Adams v._ _Shulton, Inc., U.S.A. Div.,_ 747 F. Supp. 1258, 1260 (W.D. Tenn. 1990) ("Although the same set of facts that must be analyzed to determine whether plaintiffs were defamed or fired for just cause, the defamation claim can be resolved without _interpreting_ the collective bargaining agreement.") (emphasis in original).

Finally, Defendants rely on <u>Panczykowski v. Laborers</u>, 166 L.R.R.M. 2110 (W.D.N.Y. 1998), *aff'd* 2 Fed. App'x 157 (2d Cir. 2001), which "found that the veracity of the statements [in a defamation claim] could not be resolved without interpretation of the [union] constitution."[26]  In that case, however, the allegedly defamatory statements were made in the context of alleging that the plaintiff had violated terms of the union constitution.  <u>Id.</u> at 2115-16.[27]  Many of the terms used in the allegedly defamatory statements were *defined* in the union constitution, which "describe[d] the type of financial practices that are deemed improper under the Constitution."  <u>Id.</u> at 2115.

> [D]efendants intended that the terms 'knowingly associate,' 'barred conduct,' and 'kickbacks' have the meanings *assigned to them in the [union] Constitution*. Indeed, various provisions of the [union] Constitution are referenced throughout both the Disciplinary Charges and the Complaint for Trusteeship.

<u>Id.</u> at 2116 (emphasis added).

Here, however, Hoffa referred to the International Constitution only to assert that he imposed a trusteeship "pursuant

---

[26] Document No. 7 at 11.

[27] Some examples of statements in the disciplinary charges were: that the plaintiff "committed 'barred conduct' under the [Union Constitution]; to wit, he has knowingly associated with members of the organized crime syndicate known as La Cosa Nostra," <u>id.</u> at 2112; that the plaintiff "knowingly associate[d]" with a crime family, <u>id.</u> at 2115; and that plaintiff accepted "kickbacks," <u>id.</u>

to my authority under" the constitution.[28]   The statements which Plaintiff allege are defamatory here include: (1) that Plaintiff engaged in "financial malpractice or corruption"; (2) that he "abrogated the responsibilities of his positions"; (3) that he "intentionally concealed his employment contract"; and (4) that he "did not competently perform his duties to represent the members of Local 747 in collective bargaining."[29]   None of the allegedly defamatory statements pled in Plaintiff's petition was made in the context of alleging a constitutional violation and none of the terms used by Hoffa is defined in the excerpt from the International Constitution that Defendants have exhibited.   It therefore appears that the words and terms used by Hoffa can be given their ordinary meaning, without any interpretation of the International Constitution, which is in marked contrast to Panczykowski.   Defendants have failed to demonstrate that Plaintiff's defamation claim as pled requires interpretation of the International Constitution.   Moreover, any doubt as to the propriety of removal must be resolved in favor of remand.   Acuna, 200 F.3d at 339.

    "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  Attorneys' fees are

---

[28] Document No. 7, ex. 1 at 4.

[29] Document No. 1, ex. 1 at 8 (Plaintiff's Orig. Pet.).

not available if the removing defendants "had objectively reasonable grounds to believe the removal was legally proper." Valdes v. Wal-Mart Stores, Inc., 199 F.3d 290, 293 (5th Cir. 2000). Plaintiff's request for attorneys' fees is denied.

### III.  Order

Accordingly, it is

ORDERED that Plaintiff Ernest E. Sowell's Motion to Remand (Document No. 4) is GRANTED, the request for attorneys' fees and expenses is DENIED, and this case is REMANDED to the 234th Judicial District Court of Harris County, Texas.

The Clerk will mail a certified copy of this Order to the Clerk of the 234th Judicial District Court of Harris County, Texas, as required by 28 U.S.C. § 1447, and shall notify all parties and provide them with a true copy of this Order.

SIGNED at Houston, Texas, on this 24th day of November, 2009.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

23